J-A14001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| SHATYRAH Y. JEFFERSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAHEEM D. SMITH | : | No. 2927 EDA 2025 |

Appeal from the Order Entered October 17, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  0C0914686

BEFORE:  DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 24, 2026**

Appellant Shatyrah Y. Jefferson ("Mother") appeals from the October 17, 2025 order entered in the Philadelphia County Court of Common Pleas dismissing Mother's petition for contempt of custody[1] against Raheem D. Smith ("Father").  After careful review, we affirm.

The relevant facts and procedural history are as follows.  Mother and Father share legal and physical custody of their two minor children, H.S. and M.S., now aged 16 and 11 (collectively, "Children").  On August 1, 2024, the court entered a final custody order granting Mother and Father shared physical custody on an alternating weekly basis with exchanges taking place on Mondays.  Relevant to this appeal, the order directed the custodial party picking up Children to remain in his or her vehicle during custody exchanges.

_____

[1] 23 Pa.C.S. § 5323(g)(1).

On Thursday, September 26, 2024, Mother picked up Children from school and walked with them to the bus stop to catch the bus home. Mother and M.S. got into an argument and during the argument, Mother told M.S. to go to Father's house to calm down. M.S. called Father and asked Father to pick him up, telling Father that Mother had left him at the bus stop.

Father drove to the bus stop where M.S. was waiting and got out of his car to talk to M.S. M.S. told Father that Mother had left him there alone. While Father and M.S. were standing at the bus stop talking, Mother approached, and the parents began to argue. In the ensuing altercation, Mother poked Father in the face and hit Father with her phone, and Father then slapped Mother. Mother sustained a small cut behind her left ear.

Following the altercation, Mother filed a domestic violence report, and the police arrested Father on charges of Indirect Criminal Contempt for violation of a PFA order,[2] Simple Assault, and Recklessly Endangering Another Person ("REAP"). The trial court ultimately acquitted Father of all charges.

On October 3, 2024, Mother filed a petition for contempt of custody against Father based on the incident at the bus stop. Due to the pending criminal charges, the matter was continued several times. The court held a hearing on October 17, 2025, after which the court dismissed Mother's

_____

[2] Prior to the court entering the final custody order, Mother filed a protection from abuse ("PFA") petition against Father. The PFA court entered a final PFA order against Father set to expire on November 5, 2027.

petition. On October 30, 2025, Mother filed a petition for reconsideration, which the court denied.

This appeal followed. Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issue for our review:

Did the trial court err in denying Mother's petition for [contempt of custody] against [Father] for getting out of his car during a custodial exchange, beating her in the face repeatedly and hospitalizing her with a brain injury in violation of explicit language in the [c]ustody [o]rder requiring him to stay in his car during custodial exchanges under penalty of imprisonment by finding he lacked "wrongful intent"?

Mother's Br. at 1.

Mother asserts that the trial court erred in denying her petition for contempt because Father violated the terms of their custody order when he exited his car, "deliberately approached Mother[,]" and engaged in an altercation with her. *Id.* at 10. Mother argues that Father displayed "wrongful intent to disobey the [c]ustody [o]rder provision to stay in his car during custodial exchanges." *Id.* at 18.

It is well settled that "each court is the exclusive judge of contempts against its process." *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (citation omitted). We review a trial court's finding on a contempt petition for a clear abuse of discretion, and "must place great reliance on the sound discretion of the trial judge[.]" *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa. Super. 2012) (citation omitted). A trial court abuses its discretion if it "overrides or misapplies the law or exercises judgment which is manifestly

unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record[.]" ***N.A.M. v. M.P.W.***, 168 A.3d 256, 261 (Pa. Super. 2017) (citation omitted). Importantly, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." ***Harcar v. Harcar***, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

The Custody Act provides that "[a] party who willfully fails to comply with any custody order may . . . be adjudged in contempt." 23 Pa.C.S. § 5323(g)(1). "In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence." ***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). To sustain a contempt finding, the complainant must prove: "(1) that the contemner had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***Id.*** "When making a determination regarding whether a defendant acted with wrongful intent, the court should use common sense and consider context[.]" ***Gross v. Mintz***, 284 A.3d 479, 492-93 (Pa. Super. 2022).

The trial court found that Father did not act with wrongful intent when he exited the car to speak to M.S. at the bus stop because Father believed that Mother had left M.S. there alone. The court credited Father's testimony that he arrived to pick up M.S. only as a "direct result of the communication

- 4 -

that he received from [M.S.]" and "based upon a reasonable belief that Mother, who had engaged in an argument with M.S., clearly indicated that she did not intend to take M.S. home from school." Trial Ct. Op., 1/15/26, at 7. The court highlighted that "Mother, according to her own admission, told [M.S.] that he had to go to Father's house." *Id.* The court further determined that "based upon the credible testimony of Father, it was Mother who initiated any physical altercation" by approaching Father, poking him in the face, and striking him with her phone. *Id.* at 7-8.

Based on our review of the record, the trial court did not abuse its discretion when it found that Father did not act with wrongful intent. The court credited Father's testimony that he arrived to pick up M.S. and got out of the car to talk to M.S. only because he believed that Mother had left M.S. there on his own and did not intend to take him home from school. As Father did not act with wrongful intent when he exited the car, the court properly found that Father was not in contempt of the custody order. We, therefore, affirm the court's order dismissing Mother's petition for contempt of custody.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/24/2026

- 5 -